UON SUK PARK and JOHN SULLIVAN,
in his capacity as the Administrator
of the ESTATE OF SALLIE ANN PARK,

           Plaintiffs,           04 Civ. 5228 (JGK)

     - against -           OPINION AND ORDER

THE TRUSTEES OF THE 1199 SEIU HEALTH
CARE EMPLOYEES PENSION FUND,

          Defendants.
_____

JOHN G. KOELTL, District Judge:

This action is brought pursuant to the Employee Retirement Income Security Act ("ERISA"), 29 U.S.C. § 1001 et seq., by plaintiffs Uon Suk Park ("Mr. Park") and John Sullivan ("Sullivan"), in his capacity as the Administrator of the Estate of Sallie Ann Park (the "Estate") against defendants The Trustees of the 1199 SEIU Health Care Employees Pension Fund (the "Fund").[1]  The Second Amended Complaint states the following six claims:  (1) the defendants allegedly failed to provide the Estate with a statement of the total benefits accrued and the

_____
[1] The Complaint names Linda Sullivan and John Sullivan, individually and as Administrator of the Estate of Sallie Ann Park as the plaintiffs and The Trustees of Local 1199, National Health and Human Services Employee Union as the defendant.  The Amended Complaint additionally names Uon Suk Park as a plaintiff and changes the name of the defendant to The Trustees of the 1199 SEIU Health Care Employees Pension Fund.  The Second Amended Complaint names Uon Suk Park and John Sullivan, in his capacity as the Administrator of the Estate of Sallie Ann Park, as the plaintiffs, and The Trustees of the 1199 SEIU Health Care Employees Pension Fund as the defendants.

nonforfeiture pension benefits which had accrued in Sallie Ann

Park's ("Mrs. Park") Plan in alleged violation of 29 U.S.C. §

1132(a)(1)(A) (the "First Claim"); (2) the plaintiffs request

attorney's fees and costs pursuant to 29 U.S.C. § 1132(g)(1) (the

"Second Claim"); (3) the Estate requests a declaratory judgment

that the Summary Plan Description (the "SPD") fails to comply

with 29 U.S.C. § 1055(c)(2)(B) (the "Third Claim")[2]; (4) the

defendants allegedly breached their fiduciary duty to the

plaintiffs in violation of 29 U.S.C. § 1132(a)(3)(B) (the "Fourth

Claim"); (5) the Estate requests that the Court exercise its

equitable jurisdiction pursuant to 29 U.S.C. § 1132(a)(3)(B) to

direct the defendants to grant the pension option that the

defendants allegedly should have informed Mrs. Park would be in

her best interests and that of her beneficiaries (the "Fifth

Claim"); and (6) the Estate requests the benefits as would be

allegedly due to it under the plan alleged in the Fifth claim

(the "Sixth Claim").[3]  The defendants moved for summary judgment

and the Estate cross-moved for partial summary judgment on its

Third Claim.

## I.

**The standard for granting summary judgment is well**

**established.  Summary judgment may not be granted unless "the**

**pleadings, depositions, answers to interrogatories, and**

---

[2] The Third Claim is brought pursuant to 29 U.S.C. § 1132(a)(3)(B).
[3] The Sixth Claim is brought pursuant to 29 U.S.C. § 1132(a)(1)(B).

admissions on file, together with the affidavits, if any, show
that there is no genuine issue as to any material fact and that
the moving party is entitled to a judgment as a matter of law."
Fed. R. Civ. P. 56(c); see also Celotex Corp. v. Catrett, 477
U.S. 317, 322 (1986); Gallo v. Prudential Residential Servs. Ltd.
P'ship, 22 F.3d 1219, 1223 (2d Cir. 1994).  "[T]he trial court's
task at the summary judgment motion stage of the litigation is
carefully limited to discerning whether there are genuine issues
of material fact to be tried, not to deciding them.  Its duty, in
short, is confined at this point to issue-finding; it does not
extend to issue-resolution."  Gallo, 22 F.3d at 1224.  The moving
party bears the initial burden of informing the district court of
the basis for its motion and identifying the matter that it
believes demonstrates the absence of a genuine issue of material
fact.  Celotex, 477 U.S. at 323.  The substantive law governing
the case will identify those facts that are material and "only
disputes over facts that might affect the outcome of the suit
under the governing law will properly preclude the entry of
summary judgment."  Anderson v. Liberty Lobby, Inc., 477 U.S.
242, 248 (1986); see also Consol. Edison, Inc. v. Northeast
Utilities, 332 F. Supp. 2d 639, 642 (S.D.N.Y. 2004).

Summary judgment is appropriate if it appears that the non-
moving party cannot prove an element that is essential to the
non-moving party's case and on which it will bear the burden of

proof at trial.  See Cleveland v. Policy Mgt. Sys. Corp., 526

U.S. 795, 805-06 (1999); Celotex, 477 U.S at 322; Powell v. Nat'l

Bd. of Med. Exam'rs, 364 F.3d 79, 84 (2d Cir. 2004).  In

determining whether summary judgment is appropriate, a court must

resolve all ambiguities and draw all reasonable inferences

against the moving party. See Matsushita Elec. Indus. Co. v.

Zenith Radio Corp., 475 U.S. 574, 587 (1986) (citing United

States v. Diebold, Inc., 369 U.S. 654, 655 (1962)); see also

Gallo, 22 F.3d at 1223.  Summary judgment is improper if there is

any evidence in the record from any source from which a

reasonable inference could be drawn in favor of the nonmoving

party.  See Chambers v. T.R.M. Copy Ctrs. Corp., 43 F.3d 29, 37

(2d Cir. 1994).  If the moving party meets its initial burden of

showing a lack of a material issue of fact, the burden shifts to

the nonmoving party to come forward with "specific facts showing

that there is a genuine issue for trial." Fed. R. Civ. P. 56(e).

The nonmoving party must produce evidence in the record and "may

not rely simply on conclusory statements or on contentions that

the affidavits supporting the motion are not credible." Ying Jing

Gan v. City of New York, 996 F.2d 522, 532 (2d Cir. 1993); see

also Scotto v. Almenas, 143 F.3d 105, 114-15 (2d Cir. 1998);

Consol. Edison, 332 F. Supp. 2d at 643.

## II.

The following facts are undisputed unless otherwise noted.

4

**A.**

The Fund is a multi-employer trust fund established in accordance with § 186(c) of the Labor Management Relations Act of 1947 and an "employee pension benefit plan" as the term is described under ERISA. (Defendant Trustees of Local 1199 SEIU Health Care Employees Pension Fund's Rule 56.1 Statement ("2004 Def. Stmt."), dated Dec. 9, 2004, ¶ 1; Affirmation of Key Mendes ("Mendes Aff."), sworn to Dec. 8, 2004, ¶¶ 3.)[4] The Fund is administered by a Board of Trustees for the purpose of providing pension benefits to participants, beneficiaries and spouses in accordance with the written description of the Plan, called Earning & Receiving Pension Benefits: Summary Plan Description and Official Plan Document. (2004 Def. Stmt. ¶ 6, 7; Mendes Aff. ¶¶ 8, 10.) The policy choices are set forth in layperson's terms within the Summary Plan Description ("SPD"), which is distributed to the participants upon enrollment in the Fund. (2004 Def. Stmt. ¶ 7; Mendes Aff. ¶ 9.) The plaintiffs acknowledge that Mrs. Park

---

[4] On December 9, 2004, the defendants filed a Statement of Material Facts along with their Motion for Summary Judgment pursuant to Local Rule 56.1(a). The plaintiffs did not file a Statement in response as required by Local Rule 56.1(b). As provided in Local Rule 56.1(c), the facts in the defendants' December 9, 2004 Statement will be deemed admitted if they are supported by the record. See Giannullo v. City of New York, 322 F.3d 139, 140 (2d Cir. 2003); Evans v. City of New York, 308 F. Supp. 2d 316, 319 n.2 (S.D.N.Y. 2004). On December 30, 2004, the plaintiffs did submit a Rule 56.1 Statement in connection their own Motion for Partial Summary Judgment, but this Statement was not specifically responsive to the defendants' Statement of December 9, 2004, and on February 24, 2005, the Defendants filed an additional Rule 56.1 Statement responding to the Statement filed by the Plaintiffs.

possessed a copy of the Fund's SPD. (Second Amended Compl.

("Compl.") ¶ 11.)

The Fund is a defined benefit ("DB") plan where employers

make contributions to the Fund based on actuarial design. (2004

Def. Stmt. ¶¶ 11, 12; Mendes Aff. ¶¶ 13-14.)  Unlike a defined

contribution plan where a participant has a separate account,

such as a 401(k) plan, a participant does not have any automatic

right to receive contributions to the Fund and is only entitled

to an annuity based on a defined formula if the participant meets

specific eligibility criteria as defined in the Fund's SPD. (2004

Def. Stmt. ¶¶ 10-11, 14-18; Mendes Aff. ¶¶ 12-20.)

Pension benefits are not automatic; they must be applied for

and approved by the Plan Administrator. (2004 Def. Stmt. ¶ 9;

Mendes Aff. ¶ 12; Summary Plan Description ("SPD"), attached as

Ex. B to Mendes Aff., at 54.)  A participant is entitled to

receive pension benefits if they are fully vested upon the

participant's retirement. (2004 Def. Stmt. ¶ 9; Mendes Aff. ¶ 11;

SPD at 20.)

A participant who is married at retirement must take the

pension benefits in the form of a Qualified Joint and Survivor

Annuity, unless the participant receives spousal consent to

select another option or demonstrates that the spouse cannot be

located, which is referred to as the "lost spouse" exception or

waiver. (2004 Def. Stmt. ¶¶ 38-39; Mendes Aff. ¶¶ 38-39; Plan Document, attached as Ex. B to Mendes Aff., at 85.)

If a participant dies prior to retirement, the participant's spouse is entitled to the participant's pension benefits if: the participant was vested in the Plan, the participant and the spouse had been married a full year before the participant's death, the participant and the spouse were still married at the time of the participant's death, and the participant had not cancelled this coverage with the spouse's written approval or demonstrated that the spouse cannot be located. (2004 Def. Stmt. ¶¶ 10-11; Mendes Aff. ¶¶ 10-11; SPD at 50; Plan Document, attached as Ex. B to Mendes Aff., at 86-87.)  When a participant dies prior to retirement, the participant's spouse is entitled to a Qualified Pre-retirement Survivor Annuity ("QPSA"). (2004 Def. Stmt. ¶¶ 29-31; Mendes Aff. ¶¶ 30-32.)  In accordance with ERISA, only a spouse is entitled to a QPSA; the participant cannot assign the rights to the QPSA to anyone other than a spouse. (2004 Def. Stmt. ¶¶ 31-32; Mendes Aff. at ¶¶ 32-33.)

If a claim for pension benefits is denied, the SPD notifies claimants that a lawsuit may only be filed after the complete administrative appeals procedure is followed. (SPD at 62.)[5]  The

---

[5] The Court of Appeals for the Second Circuit likewise imposes on ERISA claimants a duty to exhaust the plan's administrative remedies.  See Chapman v. ChoiceCare Long Island Term Disability Plan, 288 F.3d 506, 511 (2d Cir. 2002) ("We require exhaustion of benefit claims brought under ERISA"); Leonelli v. Pennwalt Corp., 887 F.2d 1195, 1199 (2d Cir. 1989) (affirming denial of leave to amend where the plaintiff "made no attempt, as required, to exhaust the administrative remedies provided for under the plan").

appeals procedure requires the claimant to write to the Fund within sixty days of the date of the denial notice to request administrative review. (SPD at 55.) The retirement committee reviews the claim within sixty days and provides an opportunity for the claimant and the claimant's representative to appear before the committee. (Id.)

**B.**

Mrs. Park, a fully vested participant in the Fund, was employed by the New York University Medical Center from 1976 until her death on March 20, 1998. (Rule 56.1 Statement of Plaintiffs Uon Suk Park and John Sullivan ("Pl. Stmt."), dated Dec. 30, 2004, ¶ 1; Defendants Trustees of Local 1199 SEIU Health Care Employees Pension Fund's Rule 56.1 Statement Responding to Plaintiff's Motion for Summary Judgment/Opposition to Defendant's Motion for Summary Judgment ("2005 Def. Stmt."), dated Feb. 24, 2005, ¶ 1.) She took a leave of absence in 1996 during which time she received chemotherapy for ovarian cancer. (Compl. ¶ 9.) The cancer went into remission and she returned to her job in the summer or fall of 1997. (Id. ¶ 10; Affidavit of James E. Howard ("Howard Aff."), sworn to on Dec. 28, 2004, attached to Notice of Motion, ¶ 2.)

The plaintiffs allege that after returning to work, Mrs. Park attempted to contact a Pension Fund counselor to obtain information to change the beneficiary of her pension benefits to

her children, John Sullivan and Linda Sullivan, but the defendants were not responsive. (Pl. Stmt. ¶ 2.) The plaintiffs submitted an affidavit from James E. Howard, a former co-worker of Mrs. Park's, alleging that Mrs. Park, concerned that her pension benefits would go to Mr. Park and not to her children, Linda and John Sullivan, "would try to reach the Union to change the beneficiary of her pension plan, but they did not cooperate," and that "[s]he would call the phone number in the pension booklet and leave a message but nobody would call her back." (Howard Aff. ¶¶ 1-3.) The plaintiffs allege that the defendants' failure to respond to Mrs. Park's inquiries caused Mrs. Park not to change the beneficiary of her pension benefits and not to choose to retire. (Compl. ¶¶ 20-22.)

The defendants deny that Mrs. Park ever contacted the Fund. The defendants assert that, although the Fund employs a phone staff whose primary responsibility it is to note and respond to telephone inquiries from Fund participants, there is no indication that Mrs. Park contacted the Fund. (2005 Def. Stmt. ¶ 2; Affirmation of Janette Edwards ("Edwards Aff.), sworn to on Feb. 24, 2005, ¶¶ 5-8, 10-13.)

Mrs. Park died in March 1998 at age 64, with a death certificate stating that she was a widow. (2004 Def. Stmt. ¶¶ 25, 27; Ex. A to Mendes Aff.) According to the SPD, Mrs. Park could have chosen to retire as early as age 55. (2004 Def. Stmt. ¶ 26;

Mendes Aff. ¶ 27; SPD at 30-31.)  However, she had not done so and was still employed when she died. (2004 Def. Stmt. ¶ 21, 23; Mendes Aff. ¶ 23.)

On June 4, 2001, Paul Dalnoky, the attorney representing Mrs. Park's Estate, sent a letter to the Fund inquiring about Mrs. Park's pension benefits, in which he wrote, "Uon Suk Park, her purported husband, has waived his claim to Ms. Park's pension." (Ex. C to Mendes Aff.)  On June 18, 2001, the Director of the Fund responded by letter to Mr. Dalnoky, informing him that Mrs. Park had not applied for her pension benefits prior to her death, that her spouse was entitled to benefits if Mrs. Park had been married at the time of her death, and that her spouse may at any time apply for the pension benefits, and invited Mr. Dalnoky to contact him with any further questions. (Ex. D to Mendes Aff.)

On July 2, 2004, Mr. Dalnoky filed this lawsuit, and after receiving a service copy of the defendants' motion to dismiss, allegedly contacted Mr. Park, who agreed to join the lawsuit as a plaintiff. (Affirmation of Paul B. Dalnoky ("Dalnoky Aff."), sworn to Sept. 13, 2004, ¶ 2.)  On September 21, 2004, the Fund sent a survivor's pension benefit form to Mr. Park. (2004 Def. Stmt. ¶ 47; Ex. E to Mendes Aff.)  On September 22, 2004, the Fund mailed a copy of the Fund's SPD in effect at the time of Mrs. Park's death to Mr. Dalnoky. (2004 Def. Stmt. ¶ 48.)  Mr.

Park has not contacted the Fund, applied for Mrs. Park's pension benefits, or exhausted the Fund's internal appeals process. (2004 Def. Stmt. ¶ 49; SPD at 55.)

## III.

## A.

The parties dispute whether the Estate has standing to bring this action. The Estate asserts six claims; the First and Sixth Claims are asserted under 29 U.S.C. § 1132(a)(1); the Second Claim under 29 U.S.C. § 1132(g)(1); and the Third, Fourth, and Fifth Claims under 29 U.S.C. § 1132(a)(3).[6] Section 1132(a)(1)

---

[6] 29 U.S.C. § 1132 provides, in relevant part, that:
(a) Persons empowered to bring a civil action

A civil action may be brought--

  (1) by a participant or beneficiary--

    (A) for the relief provided for in subsection (c) of this section, or
    (B) to recover benefits due to him under the terms of his plan, to enforce his rights under the terms of the plan, or to clarify his rights to future benefits under the terms of the plan...

  (3) by a participant, beneficiary, or fiduciary (A) to enjoin any act or practice which violates any provision of this subchapter or the terms of the plan, or (B) to obtain other appropriate equitable relief (i) to redress such violations or (ii) to enforce any provisions of this subchapter or the terms of the plan...

(c) Administrator's refusal to supply requested information; penalty for failure to provide annual report in complete form

  (1) Any administrator...(B) who fails or refuses to comply with a request for any information which such administrator is required by this subchapter to furnish to a participant or beneficiary (unless such failure or refusal results from matters reasonably beyond the control of the administrator) by mailing the material requested to the last known address of the requesting participant or beneficiary within 30 days after such request may in the court's discretion be personally liable to such participant or beneficiary in the amount of up to $100 a day from the date of such failure or refusal, and the court may in its discretion order such other relief as it deems proper...

authorizes suits by a "participant or beneficiary," Section
1132(a)(3) authorizes suits by a "participant, beneficiary, or
fiduciary," and Section 1132(g)(1) authorizes an award of
attorney's fees and costs in an action brought by a "participant,
beneficiary, or fiduciary."

Here, the Estate does not contend that it should be viewed
as a participant or a fiduciary. Rather, it contends that it is
a beneficiary. (<u>See</u> Pl. Stmt. ¶ 8; Pls.' Mem. of Law in Opp'n to
Defs.' Mot. for Summ. J. and In Supp. of Pls.' Mot. for Partial
Summ. J., attached to Notice of Mot., at 10.) The defendants
argue that the Estate is not a beneficiary within the meaning of
the statute.

ERISA defines "beneficiary" as "a person designated by a
participant, or by the terms of an employee benefit plan, who is
or may become entitled to a benefit thereunder." 29 U.S.C. §
1002(8). The Fund's SPD defines "beneficiary" as "[t]he person
or persons, including your spouse, that you designate to receive
payments from the Pension Fund after your death." (SPD at 70.)

---

* * *

(g) Attorney's fees and costs; awards in actions involving delinquent
contributions

   (1) In any action under this subchapter (other than an action described in
   paragraph (2)) by a participant, beneficiary, or fiduciary, the court in
   its discretion may allow a reasonable attorney's fee and costs of action
   to either party.

* * *

Plaintiff, arguing that the Estate is a beneficiary within the meaning of ERISA, misconstrues the statutory definition of "beneficiary." The definition is limited to persons "designated by the participant, or by the terms of [the] plan...." 29 U.S.C. § 1002(8). It is true that the statute refers to a person "who is *or may be* entitled to a benefit" under the plan. <u>Id.</u> (emphasis added). This language, however, merely reflects the fact that some designees are, under the terms of the plan in question, immediately entitled to a benefit while others, though designated by the participant, only stand to become entitled to a benefit upon some contingency such as the participant's death. In both situations, the threshold requirement of having been designated by the participant (or by the terms of the plan) would be satisfied.

In this case it was not. Because Mrs. Park died without applying for pension benefits, Mr. Park (who, as her spouse, is the beneficiary designated by the terms of the plan), is the only person eligible to receive her pension benefits. (<u>See</u> Plan Document, attached as Ex. B to Mendes Aff., at 86-87.)

If Mrs. Park had submitted an application to receive her pension benefits before she died, as required for her to have been able to designate a beneficiary other than her spouse, she could have named a different beneficiary if she obtained spousal consent or a lost spouse waiver. Because she did not perform

either of these acts, the Estate is not and never was eligible to be designated a beneficiary of her benefits. (See id.)

Therefore, the Estate is neither a beneficiary within the meaning of ERISA nor within the meaning set forth in the SPD. The "mere possibility" that the Estate could have been designated a beneficiary of Mrs. Park's pension benefits had she submitted a retirement application and obtained Mr. Park's consent or successfully sought a lost spouse waiver, is "[in]sufficient to confer status under § 1132." Coleman v. Champion Int'l Corp., 992 F.2d 530, 533 n.6 (5th Cir. 1993) (holding that a pension plan participant's son not designated a beneficiary lacked standing to maintain an ERISA action in both his individual capacity and his capacity as the representative of the deceased participant's estate) (citing Keys v. Eastman Kodak Co., 739 F. Supp. 135 (W.D.N.Y.), aff'd, 923 F.2d 844 (2d Cir. 1990) (holding that the son of a pension plan participant, who had not been designated to receive any of his father's pension benefits, "stood no closer to "beneficiary" status than any other person")).[7]

The Estate was, during Mrs. Park's lifetime, only a potential beneficiary. A potential beneficiary, however, is not a beneficiary. Id. In any event, Mrs. Park did not apply for

---

[7] Indeed, had Mrs. Park applied for benefits and attempted to designate a beneficiary other than Mr. Park, she could have named anyone she chose. The assertion that she would have named any particular beneficiary is "speculative at best." Coleman, 992 F.2d at 533 n.6.

benefits and did not designate the Estate as beneficiary. Because Mrs. Park died without having done so, the estate is no longer even a potential beneficiary. Mr. Park remains the only person with rights to Mrs. Park's pension benefits, and he has not yet applied for the benefits or exhausted the Plan's intra-fund administrative remedies.

Moreover, the Estate's reliance on the "non-enumerated party" standing concept established by the Court of Appeals for the Ninth Circuit's decision in Fentron Indus., Inc. v. Nat'l Shopmen Pension Fund, 674 F.2d 1300 (9th Cir. 1982), to confer standing is unavailing because both the United States Supreme Court and the Court of Appeals for the Second Circuit have previously rejected this analysis on multiple occasions.[8] See Harris Trust & Sav. Bank v. Salomon Smith Barney, Inc., 530 U.S. 238, 247 (2000) (finding that ERISA Section 502(a)(3) strictly limits the "universe of plaintiffs who may bring certain civil actions.") (emphasis in original); Franchise Tax Bd. v. Constr. Laborers Vacation Trust for S. Cal., 463 U.S. 1, 27 (1983) ("ERISA carefully enumerates the parties entitled to seek relief under [§ 502(a)(3)]; it does not provide anyone other than participants, beneficiaries, or fiduciaries with an express cause

---

[8] In Fentron, the Court of Appeals for the Ninth Circuit held that an employer, though not an enumerated party, had standing to bring an ERISA action because "[t]here is nothing in the legislative history to suggest . . . that the list of parties empowered to sue under this section is exclusive. . . ." Fentron, 674 F.2d at 1305.

of action...."); <u>Nechis v. Oxford Health Plans, Inc.</u>, No. 04 Civ.
5100, ____ F.3d ____, 2005 WL 2018630 at *3 (2d Cir. Aug. 24,
2005) (holding that only members of the enumerated classes have
standing to bring a civil action under ERISA Section 502(a)(3));
<u>Chemung Canal Trust Co. v. Sovran Bank/Md.</u>, 939 F.2d 12, 14 (2d
Cir. 1991) (stating that 29 U.S.C. § 1132(a) "names only three
classes of persons who may commence an action"); <u>Tuvia</u>
<u>Convalescent Ctr. v. Nat'l Union of Hosp. & Health Care</u>
<u>Employees</u>, 717 F.2d 726, 729-30 (2d Cir. 1983); <u>Pressroom Unions-</u>
<u>Printers League Income Sec. Fund v. Cont'l Assurance Co.</u>, 700
F.2d 889, 891-92 (2d Cir. 1983).  It is therefore established
that, absent clear Congressional expression, the courts do not
have jurisdiction over actions brought by non-enumerated parties.
<u>See</u> <u>Pressroom</u>, 700 F.2d at 892.

The enumerated parties authorized by 29 U.S.C. § 1132 to
bring suit are participants, beneficiaries, and fiduciaries.  As
the Estate has conceded that it is neither a participant nor a
fiduciary within the meaning of ERISA, and the Court has found
that it is not a beneficiary, the Estate lacks standing to
prosecute all six of its claims for relief.

**B.**

The first cause of action alleging that the defendants
failed to provide the Estate with information concerning Mrs.
Park's pension benefits, as required by 29 U.S.C. §

1132(c)(1)(B), also fails because to the extent that information was requested, it was provided. The only request within the record is the June 4, 2001, letter from Mr. Dalnoky to the Fund inquiring about Mrs. Park's pension benefits on behalf of the estate. (Ex. C to Mendes Aff.) The Fund responded to that inquiry with a letter dated June 18, 2001, informing Mr. Dalnoky that Mrs. Park had not applied for her pension benefits prior to her death, that her spouse was entitled to benefits if she were married at the time of her death, and that her spouse may apply for the pension benefits. (Ex. D to Mendes Aff.) The Fund's response also invited Mr. Dalnoky to contact Mr. Gorham if there were any further questions. (Id.) The Fund's letter in response to Mr. Dalnoky's request for information fell within the 30 day response time required by 29 U.S.C. § 1132(c)(1)(B).

Because there is no evidence that the defendants ever failed to timely respond to any request for information, summary judgment is granted in favor of the defendants with respect to the plaintiffs' First Claim.

## C.

Summary judgment should also be granted in favor of the defendants with regard to the plaintiffs' Third Claim. The plaintiffs allege that, because there is neither information regarding the lost spouse exception in the SPD nor a reference to the relevant section in the Plan Document that sets forth this

exception (Pl. Stmt., ¶ 7), Mrs. Park was unaware of her options

and did not choose to retire (Dalnoky Aff. ¶¶ 9, 13.)  The

plaintiffs state that "[c]learly, had she been aware of these

facts, she could have chosen a guaranteed pension with her estate

as the contingent beneficiary." (Id. ¶ 9.)

The Court has already found that the Estate lacks standing

to prosecute this claim.[9]  In any event, the claim must fail

because plaintiffs have presented no evidence that the SPD fails

to comply with 29 U.S.C § 1055(c)(2)(B) as alleged.

Section 1055(c), which imposes a requirement for pension

plans to include a joint and survivor annuity and preretirement

survivor annuity, states:

(c) Plans meeting requirements of section

(1) A plan meets the requirements of this section only if--

(A) under the plan, each participant--
(i) may elect at any time during the applicable election
period to waive the qualified joint and survivor
annuity form of benefit or the qualified
preretirement survivor annuity form of benefit (or
both), and
(ii) may revoke any such election at any time during the

applicable election period, and
(B) the plan meets the requirements of paragraphs (2), (3),
and (4).

(2) Each plan shall provide that an election under paragraph
(1)(A)(i) shall not take effect unless--

---

[9] The Third Claim is asserted only on behalf of the Estate, not on behalf of
Mr. Park.  Mr. Park was not in any way harmed because Mrs. Park did not
formally seek a lost spouse waiver.  To the contrary, he would have lost all
rights to her pension benefits had she done so.

(A)(i) the spouse of the participant consents in writing to such election, (ii) such election designates a beneficiary (or a form of benefits) which may not be changed without spousal consent (or the consent of the spouse expressly permits designations by the participant without any requirement of further consent by the spouse), and (iii) the spouse's consent acknowledges the effect of such election and is witnessed by a plan representative or a notary public, or

(B) it is established to the satisfaction of a plan representative that the consent required under subparagraph (A) may not be obtained because there is no spouse, because the spouse cannot be located, or because of such other circumstances as the Secretary of the Treasury may by regulations prescribe.

Any consent by a spouse (or establishment that the consent of a spouse may not be obtained) under the preceding sentence shall be effective only with respect to such spouse.

* * *

29 U.S.C § 1055(c).

As noted above, under 29 U.S.C § 1055(c)(2)(B), ERISA Joint and Survivor Annuity and Preretirement Survivor Annuity plans must provide a waiver of spousal consent if a spouse cannot be located.  Moreover, 29 U.S.C § 1055(c)(3)(A) states that:

Each plan shall provide to each participant, within a reasonable period of time before the annuity starting date (and consistent with such regulations as the Secretary of the Treasury may prescribe) a written explanation of--

(i) the terms and conditions of the qualified joint and survivor annuity,
(ii) the participant's right to make, and the effect of, an election under paragraph (1) to waive the joint and survivor annuity form of benefit,
(iii) the rights of the participant's spouse under paragraph (2), and
(iv) the right to make, and the effect of, a revocation of an election under paragraph (1).

However, neither of those provisions requires the lost spouse waiver to be included within a plan's summary plan description, and the plaintiffs point to no provision of ERISA that imposes such a requirement. Neither 29 U.S.C § 1022(b), the provision of ERISA that sets forth the information that must be included within a summary plan description, nor 29 C.F.R. § 2520.102-3, the section of the Code of Federal Regulations that specifies the information that must be included in a summary plan description, requires the inclusion of the lost spouse waiver within a summary plan description. In this case, moreover, the lost spouse waiver was set forth in the Fund's Plan Document which was attached to and distributed with the Fund's SPD, which the plaintiffs concede Mrs. Park possessed. (See Plan Document, attached as Ex. B to Mendes Aff., at 85, 87; Compl. ¶ 11.)

In any event, the Estate does not have a valid claim for an allegedly defective SPD because they conceded in their Rule 56.1 Statement that Mrs. Park did in fact seek to have Mr. Park excised from "her pension through a lost spouse waiver, but defendants never responded." (Pl. Stmt. ¶ 10.) In order to establish a cause of action based on an allegedly defective SPD a plaintiff must make an initial showing that she was "likely prejudiced." Burke v. Kodak Ret. Income Plan, 336 F.3d 103, 113 (2d Cir. 2003). In this case, the Estate is unable to show that Mrs. Park was "likely prejudiced" because plaintiffs admit that

Mrs. Park was sufficiently aware of the lost spouse waiver to seek to invoke it. (Pl. Stmt. ¶ 10.)  It would not have been possible for her to have sought to have Mr. Park excised pursuant to a lost spouse waiver if Mrs. Park was unaware of the lost spouse waiver because of the allegedly defective SPD.

### C.

### 1.

The Sixth Claim is a claim by the Estate for benefits under 29 U.S.C. § 1132(a)(1)(B).  Though the Court has already found that the Estate lacks standing, this claim also fails because the Estate failed to exhaust administrative remedies provided for under the plan.  See Chapman v. ChoiceCare Long Island Term Disability Plan, 288 F.3d 506, 511 (2d Cir. 2002) ("We require exhaustion of benefit claims brought under ERISA"); Leonelli v. Pennwalt Corp., 887 F.2d 1195, 1199 (2d Cir. 1989) (affirming denial of leave to amend where the plaintiff "made no attempt, as required, to exhaust the administrative remedies provided for under the plan"); Monroe-Trice v. UNUM Employee Short-term Disability Plan, No. 00 Civ. 6238, 2002 WL 483312, at * 5 (S.D.N.Y  Mar. 29, 2002) (requiring a determination by an ERISA plan administrator prior to district court review of a claim for benefits); Barnett v. IBM Corp., 885 F. Supp. 581, 587 n.5 (S.D.N.Y. 1995) ("[C]ourts have held exhaustion of administrative remedies to be a prerequisite to a suit for benefits.").

The primary purposes of the exhaustion requirement for ERISA claims are to:

(1) uphold Congress' desire that ERISA trustees be responsible for their actions, not the federal courts; (2) provide a sufficiently clear record of administrative action if litigation should ensue; and (3) assume that any judicial review of fiduciary action (or inaction) is made under the arbitrary and capricious standard, not de novo.

Kennedy v. Empire Blue Cross & Blue Shield, 989 F.2d 588, 594 (2d Cir. 1993) (citing Denton v. First Nat'l Bank of Waco, Texas, 765 F.2d 1295 (5th Cir. 1985)).  The exhaustion requirement is intended to "help reduce the number of frivolous lawsuits under ERISA; to promote the consistent treatment of claims for benefits; to provide a nonadversarial method of claims settlement; and to minimize the costs of claims settlement for all concerned." Id. (quoting Amato v. Bernard, 618 F.2d 599, 567 (9th Cir. 1985)).

The plaintiffs acknowledge the exhaustion requirement, but they argue either that the Estate did exhaust administrative remedies or that applying for benefits and subsequently filing a claim for administrative review would have been futile.  The plaintiffs also argue that the exhaustion requirement should be excused because the "plaintiffs may not have even known" about

the procedure. (Pls.' Opp'n Mem. of Law to Summ. J. Based Upon Exhaustion, at 3.)

Contrary to the plaintiffs' argument, the Estate did not exhaust administrative remedies. Neither Mr. Park nor the Estate has submitted an application for the pension benefits despite the SPD's statements that pension benefits are not automatic--that they must be applied for and approved by the Retirement Committee. (See SPD at 54.) The SPD also states that if a claim for benefits is denied, a lawsuit may only be filed after the complete administrative appeals procedure is followed. (SPD at 62.) The letter that Mr. Dalnoky sent to the Fund on June 4, 2001, requesting information was just that, a request for information, to which the Fund adequately responded. Instead of applying for the pension benefits and exhausting the intra-fund appeals procedure as required, the plaintiffs chose to bring this lawsuit. If an informal inquiry or unsubstantiated denial of an application "that was never filed or formally presented is reviewable in federal courts, then, in such situations, the courts and not ERISA trustees will be primarily responsible for deciding claims for benefits." Barnett, 885 F. Supp. at 588. "In such situations, there is not a sufficiently clear administrative record to support effective judicial review." Id. "Additionally, allowing judicial review in such situations would encourage frivolous lawsuits by allowing plaintiffs to sue upon

the mere pleading of a <u>de facto</u> denial of an unfiled claim, would discourage settlement of claims, and would likely increase the costs of claims settlement." <u>Id.</u>

The plaintiffs' reliance on <u>Kaszuk v. Bakery & Confectionery Union & Ind. Int'l Pension Fund</u>, 791 F.2d 548, 551 (7th Cir. 1986), is misplaced because there the deceased participant's spouse only filed the lawsuit under ERISA after exhausting the intra-fund administrative appeal remedies. Moreover, the plaintiffs are incorrect in arguing that "[t]he two unresponded-to proceedings in Surrogate's Court, the proper place for an Estate to commence an action, gives this Court even more reason to deny summary judgment on the issue of exhaustion." (Pls.' Opp'n Mem. of Law to Summ. J. Based Upon Exhaustion, at 4 n.1.) Because ERISA preemption is triggered by "'an effect on the primary administrative functions of benefit plans, such as determining a [claimant's] eligibility for a benefit and the amount of that benefit,'" the Surrogate's Court would not have jurisdiction over an action seeking benefits brought by the Estate against the Fund. <u>In re Lefkowitz</u>, No. 90 Civ. 1716, 1990 U.S. Dist. LEXIS 5920, at *18 (S.D.N.Y. May 16, 1990) (quoting <u>Aetna Life Ins. Co. v. Borges</u>, 869 F.2d 142, 146-47 (2d Cir. 1989) (internal quotations omitted)).

The plaintiffs also argue that the Estate should be excused from exhausting administrative remedies because such exhaustion

would be futile.  While courts have waived the exhaustion requirement in instances where a plaintiff has made a "'clear and positive showing' that seeking review by the carrier would be futile," Jones v. UNUM Life Ins. Co. of America, 223 F.3d 130, 140 (2d Cir. 2000) (citing Kennedy, 989 F.2d at 595), courts in this Circuit generally will not apply the futility doctrine where the plaintiff has not submitted an application for benefits under the ERISA plan.  See, e.g., Davenport v. Harry Abrams, Inc., 249 F.3d 130, 134 (2d Cir. 2001); Barnett, 885 F. Supp. at 589; see also Monroe-Trice, 2002 WL 483312, at *3.  The Court of Appeals in Peterson v. Cont'l Cas. Co., 282 F.3d, 112, 118 (2d Cir. 2002) suggests that the existence of an initial decision by the plan administrator is a prerequisite to an ERISA action for benefits. See also Monroe-Trice, 2002 WL 483312, at *4.  Absent at least an initial decision by the plan administrator, there is nothing for the district court to review.  See Peterson, 282 F.3d at 118; see also Monroe-Trice, 2002 WL 483312, at *4.  "Moreover, as courts have repeatedly pointed out, even if it were within the district court's discretion to do so, allowing a plaintiff to proceed on the basis of a claim never filed with or determined by the plan administrator would frustrate the purposes of the exhaustion requirement. . . ."  Monroe-Trice, 2002 WL 483312, at *5 (citing Kennedy, 989 F.2d at 594); see also Davenport, 249 F.3d at 133-34; Barnett, 885 F. Supp. at 588.

In this case, the Estate has not made a "clear and positive showing" that proper assertion of its claim would be futile. See Davenport, 249 F.3d at 133. It is plain that the Estate never properly filed a claim specifically seeking Mrs. Park's pension benefits. The June 4, 2001 letter to the Fund did not amount to an "unambiguous application of benefits and a formal or informal administrative decision [such that] it is clear that seeking further administrative review of the decision would be futile." Davenport, 249 F.3d at 133 (quoting Barnett, 885 F. Supp. at 588). In addition, neither Mr. Gorham's June 18, 2001 reply, nor the Fund's alleged unresponsiveness to the Surrogate's Court proceeding "render futile further pursuit of her claims through the proper channels." Id. at 133-34 (citing Bourgeois v. Pension Plan, 21 F.3d 475, 480 n.14 (5th Cir. 2000) ("[A]llowing informal attempts to substitute for formal claims procedure would frustrate the primary purposes of the exhaustion requirement.")). It is also clear that, in the absence of such a claim, the plan administrator never issued a decision regarding the Estate's eligibility for benefits. See Monroe-Trice, 2002 WL 483312 at *5.

The "[d]efendants' position in this lawsuit [also] does not establish futility." Davenport, 249 F.3d at 134 (citing Communic'ns Workers of Am. v. AT&T, 40 F.3d 426, 433 n.1 (D.C. Cir. 1994) (rejecting plaintiff's argument that defendant's actions after lawsuit was filed establish futility because to do

so "would entirely undermine the exhaustion requirement, permitting plaintiffs to bypass administrative remedies, file suit, and then hope for subsequent events to justify their futility claims"); Wilson v. Globe Specialty Prods., 117 F. Supp. 2d 92, 99 (D. Mass. 2000) (finding that despite the defendant's evidenced intent to refuse the plaintiff's claim, exhaustion is still required because the "court will not predict how [the administrator] would have decided [the plaintiff's] claim on review")).

Finally, the Estate is required to exhaust administrative remedies even if it was ignorant of the proper claims procedure prior to the institution of this action. See Davenport, 249 F.3d at 134 (citing Meza v. Gen. Battery Corp., 908 F.2d 1262, 1280 (5th Cir. 1990) ("Even though [plaintiff] did not receive a copy of the [SPD] as required by [ERISA], he has not shown that the lack of information has harmed him or precluded him from pursuing his administrative remedies at this point.")). It is undisputed that as early as June 18, 2001, the plaintiffs were offered the opportunity to contact the Fund with any questions. (Ex. D to Mendes Aff.) Furthermore, the Estate is not excused from exhausting administrative remedies even if it did not possess a copy of the Fund's SPD prior to instituting this suit. See Davenport, 249 F.3d at 134. As of September 2004, the Estate possessed the Fund's SPD (Mendes Aff. ¶ 48.), and despite the

SPD's explanation of the application for benefits and appeal processes (see SPD at 54-56), the Estate, which was represented by counsel throughout, never filed an application for benefits nor did it use the required appeal procedure. Requesting judicial review at this point amounts to a "request that this court disregard the administrative procedures entirely, a position contrary to both the Plan and case law." Barnett, 885 F. Supp. at 589 (quoting Cappiello v. NYNEX Pension Plan, No. 92 Civ. 3896, 1994 WL 30429, at *4 (S.D.N.Y. Feb. 2, 1994)). Accordingly, the Sixth Claim for benefits also fails because of the Estate's failure to exhaust administrative remedies.

**2.**

With respect to the Estate, the Fourth and Fifth Claims also fail for essentially the same reason.

While courts uniformly require exhaustion of administrative review procedures as a prerequisite to filing an action for ERISA benefits, the Court of Appeals for the Second Circuit has not yet addressed whether these procedures are required for claims under 29 U.S.C. § 1132(a)(3) for alleged breach of fiduciary duty. See Nechis, 2005 WL 2018630 at *4 (declining to reach the question of whether the exhaustion requirement applies to statutory claims under ERISA); Shamoun v. Bd. of Trs., Liquor Salesmen's Union Local 2 Pension Fund, 357 F. Supp. 2d 598, 603 n.3 (E.D.N.Y. 2005) (applying the exhaustion requirement to an ERISA breach of

fiduciary duty claim where the plaintiff sought benefits allegedly due to him while acknowledging that the Second Circuit Court of Appeals has not yet addressed this issue).

However, although styled as claims for equitable relief under 29 U.S.C. § 1132(a)(1)(B), the Estate's Fourth and Fifth Claims are also ultimately claims for Mrs. Park's benefits and, as such, are likewise subject to the exhaustion requirement. The Estate is essentially claiming that the defendants breached their fiduciary duty to it by failing to provide benefits that it is allegedly due. As the plaintiffs conceded at oral argument, the Estate essentially requests that the Court direct the Plan to grant the option that would potentially make the Estate the beneficiary (which may not have been what Mrs. Park would have selected had she chosen to retire), name the Estate the beneficiary, and award Mrs. Park's benefits allegedly due to the Estate as the remedy for the alleged breach of fiduciary duty.[10]

As a result, the plaintiffs' Fourth and Fifth Claims are subject to the exhaustion requirement, which would be rendered meaningless if claimants could evade it simply by characterizing claims for benefits as claims for breach of fiduciary duty under 29 U.S.C. § 1132(a)(3)(B). See Weiner v. Klais & Co., Inc., 108

---

[10] Mr. Dalnoky, counsel for the plaintiffs, conceded at oral argument that the remedy sought by the Estate for the alleged breach of fiduciary duty is Mrs. Park's benefits allegedly due to the Estate. Mr. Dalnoky stated that, while he was unsure of the remedy that Mr. Park was seeking in the Fourth Claim, Mr. Park is not seeking benefits.

F.3d 86, 91 (6th Cir. 1997) (finding that ERISA benefits claims characterized as breach of fiduciary duty claims are subject to the administrative exhaustion requirement so as not to effectively nullify the exhaustion requirement); Simmons v. Willcox, 911 F.2d 1077, 1081 (5th Cir. 1990) (finding that an ERISA plaintiff claiming a denial of benefits "must exhaust her administrative remedies before complaining of a breach of fiduciary duty in federal court"); Shamoun, 357 F. Supp. 2d at 603 & n.3 (applying the exhaustion requirement to an ERISA breach of fiduciary duty claim where the plaintiff sought benefits allegedly due to him).

Because these claims are, as concerns the Estate, essentially claims for benefits, there is no reason to depart from "the firmly established federal policy favoring exhaustion of administrative remedies in ERISA cases" recognized by the Second Circuit Court of Appeals. Kennedy v. Empire Blue Cross & Blue Shield, 989 F.2d 588, 594 (2d Cir. 1993) (internal quotations and citation omitted); see Chapman, 288 F.3d at 511; Barnett v. IBM Corp., 885 F. Supp. 581, 587 n.5 (S.D.N.Y. 1995).

The fact that the Estate, while purporting to request equitable relief in the Fourth and Fifth Claims, is actually seeking Mrs. Park's pension benefits is fatal to those claims for an independent reason. The Estate cannot maintain the Fourth and

Fifth Claims under 29 U.S.C. § 1132(a)(3)(B) because the Estate is requesting the grant of the pension option in order to obtain money damages, which is a legal remedy not typically available in equity.  See Great-West Life & Annuity Ins. Co. v. Knudson, 534 U.S. 204, 209-11, 221 (2002) (finding that an action seeking money damages is not maintainable under 29 U.S.C. § 1132(a)(3)); Nechis, 2005 WL 2018630 at *5-*6 (same).

As the Court of Appeals for the Second Circuit recently stated, the proper means for the Estate to seek benefits allegedly wrongly denied is in an action under 29 U.S.C. § 1132(a)(1)(B), as the Estate has done in its Sixth Claim. Nechis, 2005 WL 2018630 at *5.  As explained above, however, a prerequisite to an action under that section is the exhaustion of administrative remedies, a requirement that the Estate failed to satisfy.  Having failed to present a valid claim for equitable relief under 29 U.S.C. § 1132(a)(3)(B), summary judgment for the defendants must be granted on the Estate's Fourth and Fifth Claims.

**3.**

Unlike the Fifth and Sixth Claims, which identify only the Estate as the party seeking relief, the Fourth Claim alleges that the defendants "breached their fiduciary duty to both plaintiffs by putting their own interests above those of the plaintiffs." (Compl. ¶ 37.)  The Estate, as explained above, was in fact

seeking to recover the value of benefits allegedly wrongly denied, and therefore, in addition to its lack of standing, its claim fails both because this remedy is legal in nature and thus not available for a claim under 29 U.S.C. § 1132(a)(3)(B), and because it failed to exhaust administrative remedies, as required in an action for benefits.  Counsel for plaintiffs, while unsure at oral argument of the remedy that Mr. Park is seeking in the Fourth Claim, expressly stated that Mr. Park is not seeking to recover Mrs. Park's pension benefits.  Assuming that Mr. Park has alleged a statutory claim for equitable relief, the grounds upon which the Estate's Fourth Claim fails do not apply to him.

As noted above, the Court of Appeals for the Second Circuit has not yet addressed whether exhaustion is required for claims under 29 U.S.C. § 1132(a)(3) for an alleged breach of fiduciary duty.  See Nechis, 2005 WL 2018630 at *4 (declining to reach the question of whether the exhaustion requirement applies to statutory claims under ERISA).  There is a split among the Circuit Courts of Appeals on this issue.  See Suozzo v. Bergreen, No. 00 Civ 9649, 2003 WL 22837083, at *7 (S.D.N.Y. Oct. 20, 2003) (collecting cases).  District courts within this Circuit, however, have permitted claims for statutory violations of ERISA even though administrative remedies were not exhausted. See Stolarz v. Rosen, No. 03 Civ 3083, 2005 WL 2124545, at *4 (S.D.N.Y. Aug. 24, 2005) (collecting cases).  "An important

consideration in excusing exhaustion under such circumstances is that while plan fiduciaries have expertise in interpreting plan documents, the Court has expertise in interpreting the statute. Moreover, no administrative record is required to determine whether the defendants have complied with the statute." Id. As a result, the exhaustion requirement may well not apply to the Fourth Claim by Mr. Park.

Ultimately, however, irrespective of whether Mr. Park must exhaust administrative remedies to pursue the Fourth Claim, the claim fails on the merits because the plaintiffs have not put forth any evidence that shows that the defendants "pu[t] their own interests above those of the plaintiffs." (Compl. ¶ 37.) The Plan is not attempting to retain Mrs. Park's alleged pension benefits by denying that there is a beneficiary to these benefits. In fact, the Plan is asserting that there is a beneficiary to these benefits, Mr. Park, but he has not yet submitted the pension benefit application form. Summary judgment in favor of the defendants on this claim is therefore appropriate.

**D.**

Summary judgment in favor of the defendants should also be granted with regard to the plaintiffs' Second Claim requesting attorney's fees and costs, which the Court may, in its discretion, grant to either party in this action pursuant to 29

U.S.C. § 1132(g)(1).  As explained above, the Estate lacks

standing to seek attorney's fees and costs because it is not "a

participant, beneficiary, or fiduciary."  29 U.S.C. § 1132(g)(1);

see also Self-Ins. Inst. v. Korioth, 53 F.3d 694, 696 (5th Cir.

1995) (reversing award of attorney's fees because plaintiff was

not an enumerated party under 29 U.S.C. § 1132(g)).

There is also no basis to award attorney's fees and costs to

the plaintiffs.  Although there is no requirement that the

recipient of fees be the "prevailing party," see Miller v. United

Welfare Fund, 72 F.3d 1066, 1074 (2d Cir. 1995), in an ERISA

action a district court must apply the five-factor test

enunciated in Chambless v. Masters, Mates & Pilots Pension Plan,

815 F.2d 869 (2d Cir. 1987).  The five Chambless factors are:

"(1) the degree of the offending party's culpability or bad

faith, (2) the ability of the offending party to satisfy an award

of attorney's fees, (3) whether an award of fees would deter

other persons from acting similarly under like circumstances, (4)

the relative merits of the parties' positions, and (5) whether

the action conferred a common benefit on a group of pension plan

participants."  Id. at 871.

In this case, it is clear that the fourth factor, "the

relative merits of the parties' positions," does not favor an

award of attorney's fees to the plaintiffs.  The Court has found

that both plaintiffs' positions are entirely meritless.

Given that the Chambless factors tilt so heavily against
awarding plaintiffs attorney's fees, the Court need not inquire
into the defendants' ability to satisfy such an award to
conclude that an award of attorney's fees and costs to
plaintiffs is not warranted.

## CONCLUSION

The defendants' motion for summary judgment is **granted** and
the plaintiffs' motion for partial summary judgment is **denied**.
The clerk is directed to enter judgment and to close this case.
**SO ORDERED.**

Date:   **New York, New York**
        **September /5, 2005**

                                        John G. Koeltl
                                 United States District Judge